IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LATASHA GOSHA,                          )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )      CASE NO.: 1:10-cv-946-TFM
                                        )      [wo]
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                        )
            Defendant.                   )

**<u>MEMORANDUM  OPINION AND ORDER</u>**

Latasha Gosha ("Plaintiff" or "Gosha") filed an application for Social Security

disability insurance benefits and supplemental security income on April 22, 2008, for a

period of disability which allegedly began March 15, 2008.  (Pl. Br. 122-24).  Plaintiff's

application was denied on July 16, 2008.  (Tr. 61-65).  Upon timely request by the Plaintiff,

Gosha appeared before an Administrative Law Judge ("ALJ") on November 4, 2009.  (Tr.

35-58).  The ALJ issued an unfavorable decision on January 11, 2010. (Tr. 19-30).  Once the

Appeals Council rejected review on September 24, 2010 (Tr. 6-8) the ALJ's decision became

the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester*

*v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court has jurisdiction over this lawsuit

pursuant to 42 U.S.C. § 405(g) and the parties consent to the undersigned rendering a final

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Gosha seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. BACKGROUND

Gosha was born on February 13, 1982 and was 26 years old at the time of the alleged onset of disability.  (Tr. 130).  Gosha is a tenth grade drop out but has a GED.  (Tr. 40). Gosha held several jobs including cook, day care teacher, cashier, production worker at a factory, sanitation worker, certified nurse's assistant, and a production line worker at a chicken processing factory.  (Tr. 160-68).

At the hearing Gosha said her disability began on March 15, 2008, after a vehicle collision.  (Tr. 41).  Gosha claims she suffers from seizures, asthma, headaches, depression, bipolar disorder and schizophrenia which renders her disabled.  (Tr. 41-44).  All medical records from by Gosha show an expansive medical history beginning after March, 2008 through November, 2009.  (Tr. 25-29).

The record reveals the ALJ took into account that Gosha was seen by multiple doctors over a period of years for an assortment of medical issues which all allegedly stem from a vehicle accident on March 15, 2008. (Tr. 19-30). Immediately after the accident Gosha had a "computed tomography (CT) of her brain taken on March 15, 2008 [which] was negative." *Id*. An MRI on April 9, 2008, which showed "an 8mm pineal cyst but was otherwise unremarkable." (Tr. 25). On April 18, 2008 Gosha had normal results from an "electroencephalogram (EEG)." *Id.* The ALJ had results from "an EEG performed on May 11, 2009, [that] was abnormal due to occasional left temporal slow waves with disorganized background. An MRI of the claimant's brain the following day identified no abnormalities." *Id*.

A series of medical visits to the Southeast Alabama Medical Center where Dr. Sher Ghori, M.D., treated Gosha revealed "the claimant's seizures had not been very well controlled during the summer of 2008 but also noted the claimant had been incorrectly taking a weaker dosage of her medication." *Id.* "The medical record shows the claimant has repeatedly failed to comply with prescribed treatment, which diminishes her persuasiveness." (Tr. 28) Medical records indicate several times Gosha did not take the correct medication or the proper dose to prevent seizures. (Tr. 25-28).

Gosha testified that she suffers from depression, bipolarism, paranoia, and panic attacks but the ALJ noted that "[t]he claimant has not generally received the type of medical treatments one would expect if her mental condition was totally disabling." (Tr. 26). Of

note, Dr. J. Christopher Strunk, M.D., gave Gosha a fair prognosis and stated that she "should do well with routine outpatient treatment." *Id*. The Global Assessment of Function (GAF) of 40-45 was taken into consideration by the ALJ; however, based on 65 Fed. Reg. 50746, 50764-65 (Aug. 21 2000), as well as *DeBoard v. Barnhart*, no. 05-6854 (6th Cir. Dec. 15, 2006) the ALJ stated that "the underlying findings of the medical and non-medical evidence are found to be more relevant in determining the claimant's residual functional capacity than a GAF score, which lacks reliability in disability determinations. (Tr. 26). Dr. McGinn and Dr. Ghori found that Gosha is "fully disabled due to her mental condition." (Tr. 28) Dr. Shakir Meghani, M.D., at Southeast Psychiatric Services "opined the claimant's mental activities showed marked impairment with few exceptions" but the ALJ noted that this opinion "is inconsistent with the claimant's conservative medical treatment, his own own treatment records, and with the opinions of other examining and non-examining physicians." (Tr. 28). "For these reasons, Dr. Meghani's opinion is given little weight." *Id*. Dr. Joseph McGinn, M.D., who worked with Dr. Meghani at Southeast Psychiatric Services stated that "the claimant's behavior was normal despite her reports of hallucinations." (Tr. 26). After being treated by a series of doctors for her mental conditions Gosha was last seen on October 16, 2009, by Dr. Strunk. Dr. Strunk found Gosha to have major depression with psychotic symptoms but stated that she needed to "better compl[y] with medications and a stable outpatient regiment to improve." *Id.*

Several medical evaluations reveal Gosha is a malingerer and the ALJ properly took

the evaluations into consideration to assess Gosha.  (Tr. 27-29).  The ALJ also noted that

"[t]he claimant's lack of medical treatment for her hypertension and diabetes mellitus

indicates these impairments are not disabling."  (Tr. 27).  Gosha's medical records show

periods of greater than five months wherein her treating physician for hypertension and

diabetes "did not prescribe any treatment of these conditions" and "the most recent list of her

prescription medications does not include any medications to treat these conditions."  *Id*.

The ALJ found Gosha's credibility to be "undermined by inconsistencies between her

testimony and the medical record."  *Id*.  For instance, Gosha testified that she quit drinking

alcohol after her accident on March 15, 2008.  Medical records from Dr. Saeda Malik, M.D.,

Gosha's neurologist, noted "a high level of alcohol" in Gosha's blood work over a year after

the accident.  *Id*.  A second doctor, Dr. Joseph McGinn, M.D., "diagnosed the claimant with

alcohol abuse on June 19, 2009, and Dr. Malik included alcohol abuse in his assessment of

the claimant on July 14, 2009."  *Id*.  Gosha's credibility was also compromised when the ALJ

noted that "claimant []testified she saw Dr. Malik and Dr. Meghani as frequently as twice a

week until her insurance forced her to restrict the number of visits."  *Id*.  Medical records

show only one month in which Gosha was seen more than once in the month, much less more

than once a week.  *Id*.  The medical records also show Gosha claims to live by herself but at

the hearing Gosha testified that she lived with her mother and two children for assistance.

(Tr. 27-28).

The entirety of Gosha's records were evaluated by two State agency medical

consultants, Dr. Donald Hinton, Ph.D., and Dr. Francis W. Sullivan, M.D., who both conclude Gosha can work.  The ALJ properly gave greater weight to the opinions of Dr. Hinton and Dr. Sullivan because "Dr. Meghani's opinion is inconsistent with the claimant's conservative medical treatment, his own treatment records, and with the opinions of other examining and non-examining physicians.  (Tr. 28-29).   Additionally, Dr. Hinton's assessment was found to be consistent with that of Dr. Ghostley, who reported that "[f]rom a psychiatric perspective, [the claimant's] ability to understand, remember, and carry out instructions, as well as to respond appropriately to supervisors, co-workers, and work pressures in a work setting, is largely unimpaired."  (Tr. 28).  Dr. Sullivan gave Gosha limitations on her ability to work, including "lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; sitting for a total of about 6 hours in a 8-hour workday; standing and/or walking for a total of about 6 hours in an 8-hour workday."  (Tr. 29).  However the limitations placed on Gosha by Dr. Sullivan did not exclude work and "no treating physician has opined the claimant requires greater physical restrictions."  *Id*.

## III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence."

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)     Is the person presently unemployed?

(2)     Is the person's impairment(s) severe?

(3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual.  *Id*. at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ made four errors.  (Pl. Br. at 5).  First, Plaintiff argues "the ALJ erred in considering Ms. Gosha's past work as a cashier since her earning from this job did not rise to the level of substantial gainful activity."  *Id*.  Second, Plaintiff argues "the ALJ[] erred in finding Ms. Gosha able to perform her past work as a cashier which entails a reasoning level of three."  *Id*.  Third, Plaintiff argues "the ALJ erred by failing to find Ms. Gosha's migraine headaches a severe impairment."  *Id*.  Finally, Plaintiff argues "the ALJ failed to accord any weight to the opinions of Sheri Ghori, M.D. and Saeeda Malik, M.D., Ms. Gosha's treating physicians."  *Id*.  The issues and arguments Gosha raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

## VI. DISCUSSION AND ANALYSIS

**A.     The ALJ properly considered Gosha's earnings as a cashier because those earnings were prior to the onset date of March 15, 2008, a time period in which the ALJ properly found that Gosha was gainfully employed and met the requirement of the Social Security Act.**

Substantial gainful activity (SGA) is work that involves significant mental and physical activities and is typically done for the purposes of pay or profit. *Johnson v. Sullivan*, 929 F.2d 596, 597 (11th Cir. 1991) (citing 20 C.F.R. § 404.1572 and §404.1573). Some of the factors taken into consideration when determining whether work is considered SGA are "the time spent in the work; quality of the performance; whether the worker is self-employed; the need for special conditions or supervision; use of experience, skill and responsibilities; and whether the worker contributes substantially to the operation of the business." *Id.* The SGA of a claimant only bars entitlement to benefits during the periods of employment. *Powell ex rel. Powell v. Heckler*, 773 F.2d 1572, 1576 (11thCir. 1985), *see also Johnson*, 929 F.2d at 599 (finding that a person otherwise disabled can pass into and out of eligibility for benefits when ceasing or embarking upon employment with earnings in excess of the regulatory guidelines used by the SSA).

To determine whether Gosha could perform her past work, the work must first be established as substantial gainful activity. *Roberts v. Apfel*, 27 F.Supp.2d 1295, 1298 (N.D. Ala. 1998) (the court stated that the work performed must be real work for profit). Gosha gave the Commissioner evidence that her employment as a cashier was substantial gainful activity wherein she was employed at Hardees, KFC, and Burger King separately as a cashier

for a significant portion of 2007.  (Tr. 201).

The employment records of Gosha were properly taken into consideration by the ALJ when he found that "[t]he claimant has not engaged in substantial gainful activity since March 15, 2008, the alleged onset date."  (Tr. 21).  The periods of employment cited by Gosha are all prior to the alleged onset date.  While the ALJ found that Gosha engaged in SGA prior to the onset date, which includes work in at least three locations as a cashier, he found that she had not engaged in any gainful activity after the alleged onset date.  The Court agrees that the ALJ properly found her service as a cashier was SGA.

Gosha would have this Court look at employment information provided only by Gosha herself and find that the employment of a cashier prior to the alleged onset date should not have been considered as SGA.  If the Court were to deem her service as a cashier not to be SGA, the Court and the ALJ would likely reverse the finding that Gosha "meets the insured status requirements of the Social Security Act."  (Tr. 21).  If Gosha were to fail to meet the insured status requirements the issue of disability would be moot.  The first issue presented by Gosha is nothing more than a creative means of restating the second issue, that the ALJ erred in finding that Gosha can perform past employment.  The Court finds that the ALJ properly considered Gosha's past work as a cashier as it was part of her substantial gainful activity that allowed her to qualify for coverage under the Social Security Act.

**B.    The ALJ properly considered Gosha's past work as a cashier**.

To determine disability, the Social Security Regulations require a five-step sequential

evaluation process.  20 C.F.R. § 404.1520(a).  These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  It is a requirement that at the fourth step of the evaluation process the ALJ must "assess[] the claimant's 'residual functional capacity' and measure whether a claimant can perform past relevant work despite his or her impairment." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Circ. 2002) (citing 20 C.F.R. § 404.1520(f)); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "The claimant [] bears the initial burden of proving that she is unable to perform her previous work." *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir.1988)).  Furthermore, the claimant must show the inability to do the previous type of work, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986).

A vocational expert (VE) is not necessary in this step of the analysis.  *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *see also Hubbard v. Comm'r of Soc. Sec*., 348 Fed. Appx. 551, 553 (11th Cir. 2009)(recognizing that when the ALJ is looking at the demands of the claimant's past work as generally performed, the ALJ is entitled to rely on the DOT classifications); *Bliss v. Comm'r of Soc. Sec. Admin*., 254 Fed. Appx 757, 758 (11th Cir. 2007) (clarifying that vocational expert testimony is not required at Step Four of the sequential analysis). In *Lucas*, the ALJ ultimately concluded that the claimant was capable of performing past relevant work based in part on the testimony from a VE. *Id*. The

ALJ may consider testimony from a VE at Step Four in the analysis should he choose to do so. *Hennes v. Comm'r of Soc. Sec. Admin*., 130 Fed. Appx 343, 3 (11thCir. 2005) (the court held that the ALJ did not err in considering the testimony of the VE in deciding that the claimant could return to her past relevant work.).

The ALJ considered the testimony of Eric Anderson, a VE witness, who testified to Gosha's past relevant employment in relation to the Dictionary of Occupational Titles (DOT). (Tr. 29-30). Testimony from vocational experts is " highly valued and commonly obtained in order to establish the availability of alternative jobs for disability claimants." *Holley v. Chater*, 931 F.Supp. 840, 851 (S.D. Fla. 1996) (citing *Decker v. Harris*, 647 F.2d 291, 298 (2nd Cir. 1981)). The VE, after taking into consideration Gosha's past work, her residual functional capacity (RFC), and the specific requirements of the previous relevant employment pursuant to the DOT, testified that Gosha would be able to work as a cashier either generally or as she actually performed it in the past. *Id*. The RFC is an assessment which is based on all of the relevant evidence of a claimant's remaining ability to do work despite her impairment and is properly considered by the VE. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).

Gosha argues that the specific vocational preparation (SVP) of the past relevant employment and the RFC do not allow her to perform her previous employment a cashier. Gosha's RFC allows her to carry out simple one or two step instructions and deal with standardized situations. (Pl Br. 7-8). Such findings are consistent with one who can perform

unskilled work.  See 20 C.F.R. § 404.1521.  Cashiers' duties include the use of adding machines or cash registers, making change, issuing receipts/tickets, or operating ticket-dispensing machines, all of which is consistent with unskilled work and therefore consistent with the VE testimony.  *See* DOT #211.462-010, *see also* SSR 00-4p.

Gosha argues that there is a conflict between the reasoning level attributed to her by the ALJ's RFC as a reasoning level of "1" and the DOT's description of a cashier as having a reasoning level of "3." (Pl Br. 8).  *Leonard v. Astrue*, establishes firmly that in cases where a conflict between the DOT and the VE's testimony, in accordance with SSR 00-4p, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE['s testimony]." *Leonard v. Astrue*, 487 F.Supp.2d 1333 (M.D. Fla. 2007), *aff'd Leonard v. Comm'r of Soc. Sec.*, No. 10-11494, WL 165439 (11th Cir. Jan. 19, 2011) (quoting SSR 00-4p) (upholding the principle that a VE's testimony does not trump the DOT and that any apparent conflict must be clarified by the ALJ).  There is no specific wording that must be followed but rather the ALJ shall "determine whether the jobs identified by the VE are in fact consistent with the definitions in the DOT and the Plaintiff's limitations is appropriate. *Farley v. Astrue*, 2008 WL 360832, *2 (M.D.Fla. Feb. 8, 2008).

After clarifying that a cashier is a light and unskilled worker with an SVP of 3 the following exchange occurred between the ALJ and the VE during the November 4, 2009, hearing;

Q     All right, assume for me a hypothetical individual.  This individual has
      the same age, education and work background as the claimant.  This

individual is able to lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently. Can sit six hours in an eight hour day, stand and walk six hours in an eight hour day. Can frequently stoop, kneel, crouch and crawl and occasionally balance but is unable to climb and is unable to perform in environments of fumes, odors, gasses, etx. or environments of work hazards such as unprotected heights or dangerous machinery. Additionally this hypothetical individual can understand, remember and carry out short, simple instructions. And can attend for periods of at least two hours with normal work breaks. Would this individual be able to perform any of the prior jobs you've listed that the claimant performed?

A    yes, sir, the past work as a cashier would fit those limitations, but I'd rule out the other jobs.

Q    Well, I can understand why the medium work would disappear and I assume that the inspector and nurse assistant would fall out on the skill level. Is that correct?

A    Yes, sir.

Q    And what about the poultry boner, would that be the hazardous work environment?

A    Yes, sir, I believe so.

Q    If we have a second hypothetical individual and this individual has the same limitations as in number one but also the individual would miss work one to two days a month due to impairment and need for medical treatment. Would this individual be able to perform the cashier job?

A    Yes, sir.

(Tr. 54-55). The ALJ asked specific question to the VE regarding the medium work as well

as that of the previous employment that would "fall out on the skill level." *Id*. While the

ALJ does not use any specific language he more than complies with the requirement to "elicit

a reasonable explanation" about the types of previous work performed by Gosha, the work and skill level requirements, as well as the differences between the previous employments and her current limitations. The ALJ properly found Gosha is able to perform her past relevant work.

**C.   The ALJ properly considered all of Gosha's impairments including finding that her alleged migraine headaches were not a severe impairment.**

A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown v. Sullivant*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii)[p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir.2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)), *see also Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) ("A diagnosis alone is an insufficient basis for a

finding that an impairment is severe.  The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

In *Irby ex rel. Irby v. Halter*, 171 F.Supp.2d 1287, 1289 (S.D.Ala. 2001), the court found that the claimant's knee problem did not constitute a severe impairment.   In *Irby* the court looked to the following factors that; (1) there was little medical evidence regarding the knee with most coming from the claimant himself and not a physician; (2) the record failed to demonstrate a "record of treatment" for the knee nor that any restrictions were placed on the claimant as a result of the knee; (3) the only doctor referencing the impairment was the consultative psychiatrist who was not examining the knee; and (4) the claimant has not demonstrated "a sustained impairment" of the knee that would impact the ability to work. *Id*. at 1290.

Gosha provides little medical evidence regarding the migraine headaches, the record of treatment, or a sustained impairment caused by the migraines. *See Irby*, 171 F.Supp.2d at 1289.  An ALJ may properly focus on the claimant's daily activities, medical records and other activities during the relevant time period in finding that a claimant's migraines are not a disability.  *Osborn v. Barnhart*, 194 Fed. Appx. 654, 662-23 (11th Cir. 2006).  The allegation of the headaches, any impairments caused by the headaches and the severity of those impairments, as well as Gosha's activities and credibility were taken into consideration, individually as well as collectively by the ALJ.  The ALJ properly exercised discretion that

the alleged headaches are not a severe impairment. Nothing is before the Court which requires reversal of the ALJ in this regard.

**D.   The ALJ properly distinguished the medical opinions and reasons for giving less weight to the opinions of treating physicians**.

The Eleventh Circuit holds that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips,* 357 F.3d at 1241 (11th Cir. 2004)(citing *Lewis,* 125 F.3d at 1440). "'[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* In *Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and that the failure to do so constitutes reversible error. 125 F.3d at 1440. Furthermore, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. *Holley v. Chater*, 931 F.Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

However, the simple fact that a treating physician's opinion is included in the evidence does not require the ALJ to follow it but rather the opinion may be given less weight or dismissed entirely. *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D. Ala. 2001) (finding that the ALJ properly considered the treating physician's medical opinions based on the objective medical evidence in the record as a whole it was "entirely

reasonable" when the treating physician's records and notes were inconsistent).  When an ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be sufficient detail set forth by the ALJ for the court to conduct a meaningful review.  *Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr. 21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician because insufficient detail was set forth  by the ALJ for the reviewing court to be able to conduct any kind of meaningful analysis).

Discretion is given to the ALJ because the Eleventh Circuit found "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561).   In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court.  It is the duty of the ALJ to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  A full and fair record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988) (internal quotations and citations omitted).  This Court will reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the

proper legal analysis has been conducted." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The burden of proving disability rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows both the ALJ and the Commissioner to reach the proper conclusion. 20 C.F.R. § 416.912(a). The ALJ notes that Gosha continued to fail to follow treatment, and without good reason this constitutes a basis for denying benefits. *Lucas v. Sullivant*, 918 F2d 1567, 1571 (11th Cir. 1990). The determination that following a prescribed treatment would restore the ability to work must be based on substantial evidence. *Dawkins v. Bowne*, 848 F.2d 1211, 1213 (11th Cir. 1988). Here, the medical records noted by the ALJ show Gosha failed to comply with the treatment prescribed treatment, that compliance with the treatment program would prevent all seizures and the accompanying side affects, and would allow Gosha to return to gainful activity. (Tr. 19-30).

The Court has reviewed the record in its entirety and finds that the ALJ did not err in the rejection of the opinion of the treating physicians and that the record was developed sufficiently for this Court to determine that the ultimate decision by the ALJ is rational and supported by substantial evidence. The ALJ considered the lengthy medical history of Gosha and provided a thorough recitation of the basic medical treatments Gosha had over a three year period. (Tr. 21-30). The ALJ identified the different treating physicians, as well as the agency medical consultants, and provided to the Court a detailed rendition of the

inconsistencies between the different medical records, the inconsistencies of the individual medical records and the testimony of Gosha, as well as the consistencies of the opinions of the agency consultants with the record of evidence as a whole.   (Tr. 24-29).   The records show that Plaintiff has consistently mislead her treating physicians and is a malingerer.  (Tr. 27-28).   The records contain findings that Plaintiff was not compliant with her medical treatments from multiple treating physicians.   *Id*.

After careful consideration of the Plaintiff's medical records, the Court finds that the ALJ met the "good cause" standard necessary to disregard the opinion of her treating physicians.  *Id.*

## IV. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be entered.

Done this the 6th day of February, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE